Submitted on the record September 1, judgment of the Oregon Tax Court affirmed September 30, 2004

Joseph GALL,
*Appellant,*
*and*

Darlene M. GALL,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent,*
*and*

YAMHILL COUNTY ASSESSOR,
*Respondent.*

(OTC 4639; SC S51473)

98 P3d 390

Henry C. Breithaupt, Judge.

Joseph Gall, appellant *pro se*, filed the brief for himself.

Douglas M. Adair, Assistant Attorney General, Salem, and Rick Sanai, Yamhill County Assistant Counsel, McMinnville, filed the brief for respondents. With them on the brief was Hardy Myers, Attorney General.

GILLETTE, J.

## GILLETTE, J.

This ad valorem tax case is before us on appeal from a judgment of the Oregon Tax Court, ORS 305.445, entered after taxpayers had appealed to the Regular Division of that court from a decision of a magistrate. At issue, so far as we are able to determine it,[1] is the correct real market value (RMV) for 2002-03 ad valorem tax purposes of a manufactured structure that is located in Yamhill County and that taxpayers own. The Tax Court found that the RMV of the structure was $43,000 and entered judgment accordingly. *Gall v. Dept. of Rev.*, 17 OTR 352 (2004). Taxpayers[2] appealed to this court. We affirm.

Taxpayers purchased the manufactured structure in November 2001 for $43,000. The structure is located in a mobile home park in Yamhill County; taxpayers do not own the mobile home park.[3] Taxpayers' property tax bill for the 2002-03 tax year assessed the structure's RMV at a figure ($59,281) significantly higher than the $43,000 that they recently had paid for the structure. Taxpayers appealed that assessment to the Yamhill County Board of Property Tax Appeals (BOPTA), specifically asserting that the correct figure should be $43,000. Taxpayers also argued that the maximum assessed value (MAV) of the structure, set at $55,036 in the tax statement, should be reduced. BOPTA agreed to reduce the RMV to $43,000, but declined to reduce the MAV.

Taxpayers then appealed to the Magistrate Division of the Tax Court, asserting that the true RMV for the structure should be less than $43,000. Taxpayers also asserted that the court should reduce the MAV of the structure to its RMV. The magistrate ruled against them on both points.

---

[1] Taxpayers arguments before the magistrate, the Tax Court judge, and this court have not always been completely clear. They have proceeded *pro se* throughout this case, in spite of being urged to obtain competent counsel.

[2] Technically speaking, only taxpayer Joseph Gall signed the appeal from the judgment of the Oregon Tax Court to this court. However, taxpayer's wife, Darlene M. Gall, was a coplaintiff from the beginning of this case, and the case as argued would affect both taxpayers equally. We therefore refer to "taxpayers" throughout.

[3] Because taxpayers do not own the land on which the structure is situated, the structure is assessed and taxed as personal property. ORS 308.875.

Taxpayers then appealed to the Regular Division of the Tax Court and, in that court, added a new argument: Taxpayers contended that, pursuant to ORS 308.905 (the provisions of which are set out below, 337 Or at 431), the total tax that Yamhill County could assess against the structure was $5. The Tax Court rejected taxpayers' arguments respecting the MAV of the structure on summary judgment. After a trial, the Tax Court held that taxpayers had failed to carry their burden of proving that the structure's RMV was less than $43,000. Finally, the Tax Court ruled that taxpayers' theory under ORS 308.905 had no objectively reasonable basis, awarded damages of $300 to the Department of Revenue,[4] and awarded Yamhill County its reasonable attorney fees[5] for resisting taxpayers' argument. The present appeal followed.

■       Before this court, taxpayers argue, first, that the Tax Court erred in "assigning valuation as the basis for judgment in Yamhill County." We understand that argument to be that, whatever the normal measures for valuing property for ad valorem taxes may be, the valuation of taxpayers' structure in this case was controlled either by ORS 308.905 or by some other special statute.

Manufactured structures such as the one involved in this case "are subject to assessment and taxation under the ad valorem tax laws of this state." ORS 820.500(9). Even more specifically, a manufactured structure that is owned "separately and apart" from the land on which it is situated "shall be assessed and taxed as personal property." ORS 308.875.

Against the foregoing general law background concerning taxation of structures like taxpayers', the 1989 Legislative Assembly enacted Oregon Laws 1989, chapter

---

[4] ORS 305.437(1) authorizes the Tax Court to assess such "damages" up to the amount of $5,000 against a taxpayer for taking a position in a proceeding before that court that is "frivolous or groundless." Subsection (2) provides that a taxpayer's position is "frivolous" "if there was no objectively reasonable basis for asserting the position."

[5] ORS 20.105 authorizes courts, including the Tax Court, to award reasonable attorney fees to a party against whom "a claim * * * is asserted, if that party is a prevailing party in the proceeding * * *, upon a finding by the court that * * * there was no objectively reasonable basis for asserting the claim."

919, section 3, which is codified as ORS 308.905 and provides, in part:

"(1)   A special assessment is levied upon each manufactured structure that is assessed for ad valorem property tax purposes as personal property. The amount of the assessment is $5.[6]

"(2)   The county assessor shall determine and list the manufactured structures in the county that are assessed for the current assessment year as personal property. Upon making a determination and list, the county assessor shall cause the special assessment levied under subsection (1) of this section to be entered on the general assessment and tax roll prepared for the current assessment year as a charge against each manufactured structure so listed. Upon entry, the special assessment shall become a lien, be assessed and be collected in the same manner and with the same interest, penalty and cost charges as apply to ad valorem property taxes in this state.

"(3)   Any amounts of special assessment collected pursuant to subsection (2) of this section shall be deposited in the county treasury, shall be paid over by the county treasurer to the State Treasury and shall be credited to the Mobile Home Parks Purchase Account to be used exclusively for the purposes described in ORS 456.581 [pertaining to a state program designed to permit residents of mobile home and manufactured dwelling parks to form nonprofit organizations to purchase the parks]."

That statute demonstrates that there is no merit to taxpayers' assertion that ORS 308.905 has replaced, and is a complete substitute for, the previously existing method of ad valorem taxation of mobile structures. Instead, the statute labels the $5 in question as a "special assessment," and dedicates the money collected under it to a particular statewide program that a state agency controls. Moreover, the statute describes the list of structures subject to the special assessment as "the manufactured structures *that are assessed for the current assessment year as personal property*." (Emphasis added.) The emphasized part of that sentence, especially the

---

[6] Taxpayers have sometimes identified the amount assessable under ORS 308.905 as "$6," but the correct amount under the statute is $5.

phrase "are assessed," makes it clear that the structures subject to the special assessment also are subject to the usual ad valorem process. There is no hint in any wording of the statute that, in paying the $5 special assessment, taxpayers are relieved of the duty, still found in other statutes such as ORS 308.875 and ORS 820.500(9), to pay ad valorem taxes on their personal property. Taxpayers' contrary reading of ORS 308.905 is unsupportable. The Tax Court did not err in so holding.

■        Taxpayers' next argument is that the Tax Court erred in awarding damages against them to the Department of Revenue, asserting that such an award is "the equivalent of saying that [taxpayers] had *no right* to appeal." (Taxpayers' emphasis.) That is incorrect. Taxpayers had every right to appeal. However, they did not have the right to make frivolous arguments on appeal. Taxpayers assert that the award of damages is a "complete emasculation" of Article I of the Oregon Constitution, that is, Oregon's Bill of Rights. In so asserting, however, taxpayers overlook the fact that Article I does not authorize them to file any appeal at all, much less a frivolous one. The Tax Court did not abuse its discretion, and therefore did not err, in assessing damages against taxpayers for advancing a frivolous claim.

Finally, taxpayers argue that the award of reasonable attorney fees to Yamhill County encourages the county and its officers to "ignore the law." However, as we elsewhere have shown, the county has followed the law. The Tax Court did not abuse its discretion, and therefore did not err, in awarding reasonable attorney fees to Yamhill County.[7]

The judgment of the Oregon Tax Court is affirmed.

---

[7] Although the issues do not appear to have been argued to this court, we note (on the chance that the taxpayers did intend to argue them) that (1) ample evidence in the record supported the Tax Court's determination that the RMV for plaintiff's property was $43,000; and (2) taxpayers' contention that the MAV on the property must be reduced to the RMV for the property was wrong.